**Michael P. CRONIN, Petitioner**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

Nos. 94–1308, 95–1054.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 12, 1995.

Decided Jan. 16, 1996.

---

Martha L. Walfoort, argued the cause for petitioner Michael P. Cronin, with whom Edgar N. James, Washington, DC, was on the brief.

Suzanne L. Kalfus, argued the cause for petitioners and intervenors, with whom Jerry Anker, Arthur M. Luby, Edward J. Gilmartin, Edgar N. James, Martha L. Walfoort, Joseph Guerrieri, Jr. and Debra L. Willen were on the briefs. Judith A. Scott, Mark D.

Schneider, Susan L. Catler, Gary Green and Marcus C. Migliore, Washington, DC, entered appearances.

Christine N. Kohl, Attorney, United States Department of Justice, argued the cause for respondents, with whom Frank W. Hunger, Assistant Attorney General, Leonard Schaitman, Attorney, Paul M. Geier, Assistant General Counsel, United States Department of Transportation, and Peter J. Plocki, Washington, DC, Attorney, were on the brief.

Before: EDWARDS, Chief Judge, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Pursuant to the directives of the Omnibus Transportation Employee Testing Act of 1991, 49 U.S.C.A. §§ 45101–45106 (1995) ("Act" or "Testing Act"), the Department of Transportation ("DOT") and the Federal Aviation Administration ("FAA") issued regulations establishing procedures under which air carriers are to test employees who perform safety-sensitive functions for alcohol and drug misuse. The regulations provide that an employee who is found to have committed certain alcohol- or drug-related misconduct is permanently barred from performing the same duties that he or she performed before such misconduct. Moreover, the permanent bar prevents the employee from performing such duties for *any* employer. In this consolidated case, petitioners Michael P. Cronin (an airline pilot) and Air Line Pilots Association ("ALPA") (a labor organization representing a great many of the pilots who are covered by the regulations), as well as several other labor union intervenors, challenge the alcohol testing regulations. Their principal claim is that the regulations violate procedural due process because they do not provide a requisite hearing for persons who may be subject to the permanent employment bar.

Although petitioners have standing to challenge the constitutionality of the alcohol testing regulations, we find that their claim is not yet ripe for review by this court. Significant institutional interests favor postponement of such review. For one thing, adjudication may well prove unnecessary, for it is far from clear what procedural protections will be offered to persons facing sanctions under the regulations. Furthermore, in the event that an air carrier employee faces adverse action and is allegedly denied the requisite procedural due process, such a claim is best considered in the context of a specific factual setting. There are so many possible scenarios that might arise under the regulations that we cannot possibly guess at the precise nature of a claimed denial of procedural due process until one actually arises.

It is eminently clear, as the Government conceded at oral argument, that procedural due process protections must be afforded to any employee subjected to the permanent employment bar mandated by the regulations. However, sufficient procedural due process likely will be provided by several procedural systems already in place to address claims from employees who suffer adverse actions under the new regulations. Also, given the gravity of the permanent employment bar, and in light of the Government's concession that procedural due process protections are constitutionally required, there is good reason to think that additional procedural safeguards will be adopted to ensure that due process is available to *all* affected persons. In any event, given the fact-specific nature of procedural due process inquiries, we think it unadvisable to consider the issue at this time in the context of a broad facial challenge to the regulations. We will leave the resolution of such challenges to case-by-case dispositions in concrete enforcement actions.

Moreover, postponing review will not subject petitioners to any countervailing hardship. Petitioners do not allege that any employee presently faces a real threat of being subjected to adverse action under the regulations, and the Government concedes that any employee who alleges a deprivation of procedural due process with respect to enforcement of the regulations can seek judicial redress at the time of such deprivation. For these reasons, and because we find petition-

ers' other claims to be without merit, we deny the petitions for review.

## I. BACKGROUND

### A. *The Challenged Regulations*

In light of its finding that "increased testing" is "the most effective deterrent to abuse of alcohol and use of illegal drugs" in the transportation industries, Congress passed the Omnibus Transportation Employee Testing Act of 1991, Pub.L. No. 102–143, title V, §§ 2(5) & 3(a), 105 Stat. 917, 952–53 (1991), which directed the FAA to prescribe regulations "that establish a program requiring air carriers ... to conduct preemployment, reasonable suspicion, random, and post-accident testing of airmen, crewmembers, airport security screening contract personnel, and other air carrier employees responsible for safety-sensitive functions (as decided by the [FAA] Administrator) for the use of alcohol or a controlled substance in violation of law or [federal] regulation." 49 U.S.C.A. § 45102(a)(1) (1995). The Testing Act additionally provides that any person serving in a safety-sensitive aviation position who either uses alcohol or a controlled substance while on duty, or otherwise violates the alcohol and controlled substance regulations a second time, "may not carry out the duties related to air transportation that the individual carried out before" such violation. *Id.* § 45103(c).

On December 15, 1992, DOT and its component agencies (including the FAA) published for notice and comment proposed rules on alcohol testing. 57 Fed.Reg. 59,409 (1992); 57 Fed.Reg. 59,458 (1992). On February 15, 1994, DOT published final procedures for alcohol testing in various regulated industries, including aviation. 59 Fed.Reg. 7340 (1994) (codified at 49 C.F.R. pt. 40). On the same day, the FAA issued its own industry-specific alcohol misuse regulations, which took effect on January 1, 1995. 14 C.F.R. §§ 121.458, 121.459 & pt. 121, App. J (1995).

As required by the Testing Act, an employee who uses alcohol on duty, or otherwise violates the regulations a second time, is permanently prohibited from performing the safety-sensitive duties he performed before such violation. 14 C.F.R. pt. 121, App. J,

§ V(B) (1995). The regulations do not provide for a hearing, appeal, or other process in which an employee can challenge the test results or the imposition of the permanent prohibition on performing safety-sensitive duties. In fact, DOT consciously omitted hearing provisions, stating in the preamble to the final alcohol testing regulations that "[t]he rules we have published today do not provide for a right to a hearing." 59 Fed. Reg. 7302, 7328 (1994).

The regulations also fulfill the edict of the Testing Act by directing employers to conduct, *inter alia*, reasonable suspicion, random, and post-accident testing of "covered employees" specified by the FAA as performing safety-sensitive functions. 14 C.F.R. pt. 121, App. J, §§ II & III (1995). Employers are required to use "evidential breath testing devices" for both screening and confirmatory alcohol testing; the regulations provide that a test is invalid if the employer does not follow the prescribed testing procedures. 49 C.F.R. §§ 40.53 & 40.79 (1994). An employer's reasonable suspicion determination "shall be based on specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the employee." 14 C.F.R. pt. 121, App. J, § III(D)(2) (1995). The regulations regarding random testing set the initial minimum annual percentage rate at 25%, and provide for adjustment of the testing rate according to the current violation rate for the entire industry. *Id.* § III(C)(1)–(4).

### B. *Review Sought by Petitioners Cronin and ALPA*

Although he did not comment on the proposed regulations, Michael P. Cronin, a pilot employed by American Airlines, Inc., petitioned this court for review of the FAA alcohol testing regulations on April 11, 1994. Cronin challenges the FAA regulations on several grounds. He argues that the permanent employment bar established by the regulations is subject to the notice and hearing requirements guaranteed by the Due Process Clause of the Fifth Amendment. Cronin also argues that the reasonable suspicion testing procedures established in the FAA regulations violate the Fourth Amendment's ban on

unreasonable searches, and constitute a delegation of coercive sovereign authority that violates the Fifth Amendment's due process guarantee. Finally, Cronin asserts that the FAA's selection of employees to be covered by the alcohol testing regulations, and the FAA's industry-wide method of adjusting the annual random testing rate, are arbitrary and capricious.

ALPA, a labor organization representing some 42,000 pilots subject to the DOT and FAA regulations, did comment on the proposed regulations, but did not seek judicial review of the alcohol misuse regulations issued on February 15, 1994. On October 27, 1994, however, ALPA filed a "Petition to Modify Regulations" with DOT and the FAA, arguing that the regulations did not establish sufficient procedural protections to accord with due process and should be modified, *inter alia*, to provide some form of hearing for employees subject to permanent employment disqualifications. ALPA further contended that such a hearing procedure was required by the Testing Act itself, the Federal Aviation Act, and the Administrative Procedure Act ("APA").

By letter dated December 30, 1994, DOT and the FAA denied ALPA's petition, concluding that the issues raised therein had been addressed in the rulemaking. On January 23, 1995, ALPA petitioned this court for review of the agencies' December 30 decision. Additional labor organizations representing various classes of airline employees have intervened in support of ALPA's petition, which this court consolidated with Cronin's.[1]

## II. Analysis

### A. *Petitioners' Procedural Due Process Claims Are Not Ripe for Review*

 As an initial matter, we note that petitioners have standing to press their claim that the alcohol testing regulations at issue do not afford procedural due process in accordance with the Fifth Amendment. Cronin is a member of the regulated class, and ALPA may assert representational standing to protect the rights of its members who fall within the regulated class. *See National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C.Cir.1995). Under *Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988), the likelihood that the alcohol testing regulations will be enforced against ALPA members provides sufficient threat of injury to confer on ALPA standing to challenge the constitutionality of the regulations.[2] Likewise, we have held that an individual who belongs to a specific class made subject to a challenged testing regulation has standing to attack the regulation without offering evidence that he or she is particularly likely to be tested. *See Amalgamated Transit Union v. Skinner*, 894 F.2d 1362, 1366 (D.C.Cir.1990) (Transit workers had "sufficiently personal stake in the outcome of [a challenge to drug testing regulations] to satisfy Article III standing requirements" where the workers were subject to drug testing under certain circumstances.); *see also Committee for GI Rights v. Callaway*, 518 F.2d 466, 472 (D.C.Cir.1975) (The court found standing upon concluding that plaintiff members of the armed forces "are subject to all aspects of the on-going [drug monitoring and rehabilitation] program

---

1. Although ALPA's "Petition to Modify Regulations" challenged not only the alcohol testing regulations, but also other, drug testing regulations that were promulgated by the FAA pursuant to the Testing Act, the brief submitted by ALPA addresses only the alcohol testing procedures. *See* Joint Brief for the Petitioners and Intervenors ("Joint Brief") at 2–3 (The joint Statement of Issues Presented for Review mentions only the alcohol testing regulations.). Thus, we do not address the drug testing regulations in this opinion.

2. In *Pennell*, the Court found that an association of landlords had standing to bring a facial challenge to a city ordinance empowering a hearing

officer to limit the amount of a landlord's rent increase. The Court stated that "[t]he likelihood of enforcement, with the concomitant probability that a landlord's rent will be reduced below what he or she would otherwise be able to obtain in the absence of the Ordinance, is a sufficient threat of actual injury to satisfy Art. III's requirement that '[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" 485 U.S. at 8, 108 S.Ct. at 855 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)).

which allegedly violates their constitutional rights.").

■ Nevertheless, we find that petitioners' procedural due process claims are not ripe for review.[3] In the context of judicial review of agency action, the ripeness doctrine largely represents a prudential attempt to balance the interests of the court and the agency in delaying review against "the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Eagle-Picher Indus. v. EPA*, 759 F.2d 905, 915 (D.C.Cir.1985); *see also State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C.Cir.1986) ("[I]f the interests of the court and agency in postponing review outweigh the interests of those seeking relief, settled principles of ripeness squarely call for adjudication to be postponed."), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). The Supreme Court established the framework for reaching this balance in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), where the Court set forth a two-pronged test that requires a reviewing court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."

■ Under the "fitness of the issues" prong,

the first question for a reviewing court is "whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review." *Better Gov't [Ass'n v. Department of State* ], 780 F.2d [86] at 92 [ (D.C.Cir. 1986) ]; *see also Payne [Enterprises, Inc. v. United States* ], 837 F.2d [486] at 492 [ (D.C.Cir.1988) ]; *Eagle–Picher*, 759 F.2d at 915. Next, we consider whether the court or the agency would benefit from postponing review until the policy in question has sufficiently "crystallized" by taking on a more definite form. *Better Gov't*, 780 F.2d at 92.

*City of Houston v. HUD*, 24 F.3d 1421, 1431 (D.C.Cir.1994). The "court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," *Eagle–Picher*, 759 F.2d at 915, militate in favor of postponing review if, for example, the court finds "that resolution of the dispute is likely to prove unnecessary," or "that the court's deliberations might benefit from letting the question arise in some more concrete ... form," *State Farm*, 802 F.2d at 479 (internal quotation omitted).

Here, we find that these considerations weigh against immediate review of petitioners' procedural due process claims. First, it is uncertain whether any employees will in fact be subjected to the permanent employ-

---

**3.** Apart from ripeness, we also note that there is a serious question whether ALPA's procedural due process claim is precluded as a result of ALPA's failure to file for judicial review in a timely manner. A petition for review of an order issued by DOT or the FAA "must be filed not later than 60 days after the order is issued." 49 U.S.C.A. § 46110(a) (1995). ALPA did not petition this court for review within 60 days of February 15, 1994, when DOT and the FAA issued the alcohol testing regulations at issue; rather, ALPA filed a "Petition to Modify Regulations" with the agencies on October 27, 1994, and then petitioned this court for review within 60 days of the agencies' December 30 denial of ALPA's petition.

We doubt that ALPA can escape the 60–day filing deadline that began running on February 15, as it seeks to do, merely by relying on *NLRB Union v. FLRA*, 834 F.2d 191 (D.C.Cir.1987). In that case, we observed that, in some circumstances, a viable "method of obtaining judicial review of agency regulations once the limitations period has run is to petition the agency for

amendment or rescission of the regulations and then to appeal the agency's decision." *Id.* at 196. However, it is far from clear that, in the present situation, ALPA's petition to modify the alcohol testing regulations brings this case within the reasoning of *NLRB Union*. For example, although this court permitted the NLRB Union to appeal the FLRA's response to the union's untimely petition for amendment, the opinion in *NLRB Union* took pains to note that such an appeal was *"the only remaining path to judicial consideration* of the substantive validity of the FLRA's regulations." *Id.* at 197 (emphasis added). The same situation does not exist here, for ALPA and/or affected employees may challenge the legality of the regulations in an enforcement action.

However, given that petitioner Cronin timely filed for review and raised essentially the same procedural due process claim that ALPA asserts regarding the alcohol testing regulations, *see* Petitioner Cronin's Amended Statement of Issues ¶ 6, we need not linger on the statutory preclusion issue regarding ALPA's assertion of the same claim.

ment bar without the benefit of procedural due process. There is no doubt, and the Government concedes, that procedural due process protections must be afforded to any employee subject to alcohol testing under the regulations who is deemed to have violated the regulations in a manner that subjects the employee (or brings the employee substantially closer to being subject) to the permanent employment bar mandated by the regulations. One reason for the Government's concession on this issue is the gravity of the consequence of the employment disqualification sanction: the employee is barred from performing the same duties for *any* employer, a much harsher result than was likely prior to adoption of the regulations at issue in this case.[4]

Nevertheless, there are already several procedural systems in place to address the claims of employees who suffer adverse actions under the new regulations. For instance, many employees subject to the permanent employment prohibition also will be subject to FAA certificate revocation hearings in which the employee may challenge the evidence offered to support the employer's determination that the employee engaged in alcohol-related misconduct. Further, an employee can file a complaint with the FAA if the specific testing procedures used violate the FAA's regulations. As the Government observes in its brief, not only would the FAA be obligated to investigate such a complaint (provided there is a reasonable ground for an investigation), but if the investigation reveals a violation, the agency would also be obligated to provide notice and a hearing before issuing an order to compel compliance with the regulations. *See* 49 U.S.C.A. § 46101(a)(1), (4) (1995). Ultimately, one or more of these procedures may provide procedural due process for employ-

ees facing adverse actions under the regulations.

In addition, given the gravity of the sanction and the Government's recognition of the need for procedural protections, it is certainly likely that additional fora and procedures will be adopted to fill any voids that presently exist in procedural due process protections for affected persons. Should such protections not be forthcoming, however, the courts stand ready to redress meritorious claims involving concrete actions. It makes no sense for us to anticipate a wrong when none may ever arise. "The interests of the court therefore favor postponing review until it is clear that judicial intervention is required, and will be consequential." *National Ass'n of Regulatory Util. Comm'rs v. United States Dep't of Energy,* 851 F.2d 1424, 1429 (D.C.Cir.1988).

The Government has acknowledged that any employee who is in fact deprived of procedural due process with respect to enforcement of the regulations can seek redress in court at the time of such deprivation, and is free to challenge the agency's regulations in the context of the specific enforcement action. At that point, a court would be faced with a concrete factual setting within which to evaluate the due process requirements. Given the variable nature of procedural due process, and given the variety of procedural schemes already in place (or likely to be adopted), we think it unadvisable to consider petitioners' facial challenge to the regulations, rather than allowing the contours of due process to be fleshed out on a case-by-case basis in any enforcement actions that may arise.

■ Finally, having found that the court's interests favor deferring review of petitioners' procedural due process claims,[5] we move

---

4. As discussed at oral argument, prior to the alcohol testing regulations challenged here, an air carrier employee found by his or her employer to have engaged in alcohol-related misconduct could have been considered for re-employment by the same carrier or another once the employee had successfully completed a rehabilitation program.

5. We need not address the *agency's* potential interests in delaying review, because, as dis-

cussed *infra,* we find that there is no countervailing hardship to petitioners to offset the *court's* interests in delay. *See National Ass'n of Regulatory Util. Comm'rs,* 851 F.2d at 1429 ("With this court's interest in postponing review on one side of the *Abbott Laboratories* balance, and no countervailing hardship to the petitioners on the other side, the [agency's] assertion that its own interests further tip the balance in favor of delay is of no moment.").

on to the "hardship" prong of the *Abbott Laboratories* test, under which we must consider petitioners' countervailing interests in immediate review. *See* 387 U.S. at 149, 87 S.Ct. at 1515. "It is well settled that for an institutional interest in deferral to be outweighed, postponing review must impose a hardship on the complaining party that is immediate, direct, and significant." *State Farm,* 802 F.2d at 479–80. We find that petitioners can make out no such hardship. The primary injury alleged by petitioners is not a present hardship resulting from the regulations themselves, but rather a future injury that may result from enforcement of the regulations in circumstances where procedural due process is not satisfied. *See National Ass'n of Regulatory Util. Comm'rs,* 851 F.2d at 1429 (The court found that no countervailing hardship would result from postponing review of an agency "Notice" establishing a method for allocating costs, where "[a]ny injury [petitioners] allege is a hypothetical future injury owing to the [agency's] expected use of the methodology in [a future] Report, not a present hardship resulting from the Notice itself.").

Moreover, as stated above, any employee subjected to the permanent bar without adequate process could file suit to challenge both the imposition of the bar and the constitutionality of the regulations. Thus, this is not a case where "the fact that a claim may not be reviewable in the future is a factor to be weighed in the 'hardship' prong of the ripeness test." *City of Houston,* 24 F.3d at 1432 n. 10. Here, as in *City of Houston,* " '[t]he only hardship [petitioners] will endure as a result of delaying consideration of this issue is the burden of having to file another suit.' " *Id.* at 1432 (quoting *Webb v. Department of Health & Human Servs.,* 696 F.2d 101, 107 (D.C.Cir.1982)). We therefore similarly conclude, as a prudential matter, that petitioners' procedural due process claims are premature at this time.[6]

## B. *Petitioner Cronin's Separate Constitutional Claims Are Precluded*

■ Petitioner Cronin claims that the reasonable suspicion testing called for under the FAA's regulations violates the Fourth and Fifth Amendments, because such testing constitutes a Fourth Amendment search that must be supported by probable cause, and because the reasonable suspicion testing regulations delegate coercive sovereign authority to private employers without sufficiently circumscribing the employers' discretionary exercise of that authority. However, judicial review of these claims is precluded under 49 U.S.C.A. § 46110(d) (1995), because Cronin failed to demonstrate in his briefing before this court that these objections were raised during the rulemaking.[7]

■ After oral argument in this case, Cronin requested leave to supplement the parties' Appendix with excerpts from the comments submitted to the FAA during its rulemaking. Cronin asserts that the cited comments did indeed raise both the Fourth Amendment issues and the delegation concerns before the agency. However, Cronin did not produce or cite to this documentation at a time when the Government could have considered and responded to it during briefing or at oral argument; instead, in his reply brief, Cronin relied largely on DOT's discussion of Fourth Amendment issues in the regulations' preamble, which we find insufficient to satisfy the specific requirements of section 46110(d). Cronin's present attempt to alter the basis of his argument by citing to newly-discovered comments comes too late, especially given that some of the comments Cronin now cites are nothing more than vague incantations of the phrase "probable cause," which the Government could well have argued (had it been given the opportunity) do not establish that Cronin's spe-

---

6. We find no merit in petitioners' arguments that the failure of the FAA's regulations to provide for hearings prior to imposition of the permanent employment bar violates *statutory,* as opposed to constitutional, requirements.

7. The statute provides that a reviewing "court may consider an objection to an order of the

[DOT] Secretary or [the FAA] Administrator *only if* the objection was made in the proceeding conducted by the Secretary or Administrator or if there was a reasonable ground for not making the objection in the proceeding." 49 U.S.C.A. § 46110(d) (emphasis added).

**1134**

cific objections were sufficiently raised before the agency. It is well established that this court will not entertain arguments raised for the first time in a party's reply brief. *See, e.g., Natural Resources Defense Council, Inc. v. EPA,* 25 F.3d 1063, 1071 n. 4 (D.C.Cir.1994) ("[B]ecause petitioners waited until the reply brief to raise [a new argument], the [agency] was given no chance to respond, either by discounting the evidence cited by petitioners or pointing the court to record evidence supporting the [agency's] conclusion."); *Herbert v. National Academy of Sciences,* 974 F.2d 192, 196 (D.C.Cir.1992) ("To consider an argument discussed for the first time in reply would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response."). In light of this rule, we are disinclined in this situation to entertain arguments based on evidence cited by Cronin for the first time, not in his reply brief, but *after oral argument.*

In any event, even if we were to accept Cronin's belated filing and were to find that the cited comments satisfy the requirements of section 46110(d), the variable nature of probable cause, like the variable nature of procedural due process, would counsel against finding Cronin's claims ripe for review. The Government properly acknowledged at oral argument that these constitutional issues may be raised in actions contesting enforcement of the regulations, should any hereafter arise. Such enforcement actions would provide a more appropriate forum in which to resolve any Fourth and Fifth Amendment issues regarding the reasonable suspicion testing, and we decline to reach those issues here.[8]

### III. Conclusion

For the reasons set forth above, the petitions for review are denied.

*So ordered.*

---

8. Cronin's APA-based claims, regarding the FAA's selection of categories of employees to be covered by the alcohol testing regulations and the method of adjusting the random testing rate, are so obviously lacking in merit that no discussion of these issues is necessary.