**BEVERLY ENTERPRISES, INC. and Beverly Health and Rehabilitation Services, Inc., Plaintiffs,**

v.

**Alexis M. HERMAN, Secretary of the United States Department of Labor, and The United States Department of Labor, Defendants.**

No. Civ.A. 97–2475 SSH.

United States District Court, District of Columbia.

March 26, 1999.

8

D. Joe Smith, Jenner & Block, Washington, DC, for plaintiff.

AUSA Suzanne C. Nyland, U.S. Attorney's Office, Washington, DC, for defendant.

## *OPINION*

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion to dismiss, plaintiffs' response, defendants' reply, and both parties' supplemental memoranda. Upon consideration of plaintiffs' amended complaint and the relevant pleadings, the Court grants defendants' motion in part and denies it in part. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 . . . ." Fed.R.Civ.P. 52(a); *see also Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

## BACKGROUND[1]

This case concerns the Immigration Nursing Relief Act of 1989 ("INRA"), 8 U.S.C. § 1101 *et seq.*, and regulations promulgated by the Department of Labor ("DoL") pursuant to that statutory scheme. The INRA was enacted in order to alleviate a national shortage of registered nurses. H.R.Rep. No. 101–288

---

1. The Court recites the background facts as alleged in plaintiffs' amended complaint. *See* *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997).

(1989), *reprinted in* 1989 U.S.C.C.A.N. 1894. To achieve this goal, the legislation provided a procedure under which employers more easily could hire foreign nurses. In order to ensure the continued recruitment and retention of citizen nurses, under the admission program established by the INRA ("the H1A program"), Congress required employers to attest to certain conditions. 8 U.S.C. § 1101(a)(15)(H)(i)(a); *id.* § 1182(m)(2)(A); H.R.Rep. No. 101–288, *reprinted in* 1989 U.S.C.C.A.N. at 1887–90. For example, the INRA required employers to attest that: (1) the employment of the alien would not adversely affect the wages and working conditions of registered nurses already employed at the facility; and (2) an alien employed by a facility would be paid the wage rate for registered nurses similarly employed by the facility. 8 U.S.C. § 1182(m)(2)(A)(ii)–(iii).

Although Congress generally delineated the attestation requirements in the INRA itself, the statute further provided that the DoL "shall ... publish final regulations to carry out section 212(m) [8 U.S.C. § 1182(m) ] of the Immigration and Nationality Act." Pub.L. No. 101–238, 103 Stat.2099, 2102 (1989). In accordance with this provision, the DoL published interim final regulations effective December 6, 1990, *see* 55 Fed.Reg. 50,500 (1990), and final regulations in January 1994. *See* 59 Fed.Reg. 882, 897 (1994).

Beverly Enterprises, Inc., and Beverly Health and Rehabilitation Services, Inc., (collectively "Beverly") own and operate a large number of health care facilities that provide long-term nursing care and rehabilitation services. In April 1995, the DoL began an investigation to determine whether Beverly's employment practices were in violation of the INRA. When Beverly asked what motivated the investigation, investigators allegedly responded that it was a "routine audit," and specifically denied that it was in response to any complaint. DoL investigators repeatedly required more information, which Beverly provided, based on the belief that it was under a legal obligation to do so. In February 1996, Beverly sought to confirm that the investigation was not in response to a complaint, but the investigators refused to confirm their earlier statement. In May 1996, Beverly informed the DoL that unless and until the agency stated whether there was a complaint, Beverly would not provide the information requested. The DoL allegedly responded that it did not need a complaint to conduct an investigation. However, it stated that the DoL had received a complaint about Beverly from the Department of State. The DoL allegedly refused to confirm or deny the receipt of any complaint from a private party.

After another attempt to ascertain whether the investigation was undertaken in response to a complaint, Beverly refused to participate further in the investigation. The DoL, however, allegedly continued its investigation in secret, and in August of 1997 it contacted Beverly to present the results. The parties were unable to agree on a date to meet, and Beverly did not hear anything further from the DoL.

On October 22, 1997, Beverly filed a complaint in this Court. On January 6, 1998, Beverly representatives met with DoL officials. At that meeting, the DoL presented the information it obtained as a result of its investigation and asked Beverly to pay over $3.4 million in back wages covering the investigation period, allegedly based on a failure to pay the appropriate "prevailing wage" to either its H1A nurses or its citizen nurses. Beverly then filed an amended complaint on January 21, 1998, in light of the new factual posture of the case. The amended complaint alleges that the DoL violated the Administrative Procedure Act ("APA") by: (1) promulgating various regulations that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C.

§ 706(2)(C);[2] (2) investigating Beverly without a complaint from an "aggrieved party" within the meaning of 8 U.S.C. § 1182(m)(2)(E)(ii); (3) interpreting "aggrieved party" to include a government agency, namely, the Department of State; (4) initiating an invalid investigation against Beverly; and (5) conducting an investigation beyond the time limit specified in the INRA.

## STANDARD OF REVIEW

A motion to dismiss should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To that end, the complaint is construed liberally in the plaintiffs' favor, and plaintiffs are given the benefit of all favorable inferences that can be drawn from the facts alleged. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir. 1997); *Tele–Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334–35 (D.C.Cir.1985).

## DISCUSSION

Defendants challenge Beverly's claims on several grounds. They contend that all the claims should be dismissed because there has been no final agency action, that they are not ripe for judicial review, and that Beverly has failed to exhaust administrative remedies. Furthermore, defendants contend that, to the extent that Bev-

erly brings a pre-enforcement challenge to DoL regulations, that claim violates the statute of limitations and is barred by laches.

## I. *Whether Beverly's Claims Implicate "Final Agency Action"*

■ Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 238, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). "Final agency action" is a jurisdictional prerequisite to judicial review.[3] *See Hindes v. FDIC*, 137 F.3d 148, 161 (3d Cir.1998); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 266 (9th Cir.1990); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 745 (D.C.Cir.1987) (Williams, J., concurring); *Independent Petroleum Ass'n of America v. Babbitt*, 971 F.Supp. 19, 29 n. 5 (D.D.C. 1997). Defendants contend that there is no final agency action in this case because Beverly filed its complaint while the case was still in an investigative posture. Moreover, although on March 13, 1998, the Wage and Hour Administrator ("the Administrator") issued a written determination that Beverly violated R4RA and DoL regulations, defendants contend that, because Beverly appealed that decision to an Administrative Law Judge ("ALJ") on March 28, 1998, that cannot be final agency action.

---

2. The regulations challenged by Beverly are 20 C.F.R. § 655.400, which provides in relevant part that the Administrator shall conduct investigations under 8 U.S.C. § 1182(m) "either pursuant to a complaint or otherwise"; 20 C.F.R. § 655.310(e)–(f), which provide in relevant part:

> To meet the requirement [that employment of an alien will not adversely affect the wages and working conditions of registered nurses similarly employed] ... the facility shall attest that it shall pay each nurse of the facility at least the prevailing wage for the occupation in the geographic area. The facility shall pay the higher of [the prevailing wage for the

occupation in the geographic area] ... or the [facility] wage;

and 20 C.F.R. § 655.410(a), which authorizes monetary penalties when "there has been a violation of the attestation or subpart D or E of this part."

3. Accordingly, when considering the issue of finality, the Court looks to matters outside the pleadings. *See Haase v. Sessions*, 835 F.2d 902, 905–06 (D.C.Cir.1987); *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

█ The Supreme Court has made it clear that the "finality" element of the APA should be interpreted "in a pragmatic way." *Standard Oil,* 449 U.S. at 239, 101 S.Ct. 488; *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Factors relevant to the finality inquiry include: (1) whether the action was a "definitive" statement of the agency's position; (2) whether it had a direct and immediate effect on the day-to-day business of the party affected; and (3) whether analysis of the action is legal or factual in nature. *See Standard Oil,* 449 U.S. at 239, 101 S.Ct. 488 (citing *Abbott Laboratories,* 387 U.S. at 151–54, 87 S.Ct. 1507); *Baker Hughes Inc. v. Kirk,* 921 F.Supp. 801, 806 (D.D.C.1995); *see also Her Majesty the Queen in Right of Ontario v. EPA,* 912 F.2d 1525, 1531 (D.C.Cir. 1990) ("The [finality] inquiry seeks to distinguish a tentative agency position from the situation where 'the agency views its deliberative process as sufficiently final to demand compliance with its announced position.'") (quoting *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430, 436 (D.C.Cir.1986)).

█ Count I of Beverly's complaint, which consists of a pre-enforcement challenge to various DoL regulations, clearly implicates final agency action. It is well-settled that the promulgation and publication of a final regulation after formal notice and comment is "final" agency action.[4] *See Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) [hereinafter *Toilet Goods I*]; *Abbott Laboratories,* 387 U.S. at 149–52, 87 S.Ct. 1507; *State Farm Mut. Auto. Ins. Co. v. Dole,* 802 F.2d 474, 480 (D.C.Cir. 1986).

█ Counts II–V challenge: (1) the DoL's authority to investigate Beverly without a complaint from a private entity, (2) the DoL's authority to investigate Beverly on the basis of a complaint from the Department of State; and (3) the timeliness of the DoL's investigation. *See* Am. Compl. §§ 46–60. "When completion of an agency's processes may obviate the need for judicial review, it is a good sign that an intermediate agency decision is not final." *DRG Funding Corp. v. Secretary of Hous. & Urban Dev.,* 76 F.3d 1212, 1215 (D.C.Cir.1996); *see also Acura of Bellevue v. Reich,* 90 F.3d 1403, 1408 (9th Cir.1996); *Bellsouth Corp. v. FCC,* 17 F.3d 1487, 1489–90 (D.C.Cir.1994). The Court concludes that these counts do not implicate final agency action due to Beverly's administrative appeal of the Administrator's determination that Beverly violated INRA and DoL regulations. Although Beverly argues to the contrary, the Court believes that judicial review of the DoL investigation of Beverly may end up being unnecessary if the ALJ rules in favor of Beverly on its administrative appeal. For example, if the ALJ determines that "[t]he penalties and back wages sought by the Administrator are barred, in whole or in part, by the statute of limitations," *see* Beverly's Request for Hearing, at 4 (Mar. 23, 1998) (attached as Exhibit C to Beverly's Supplemental Memorandum in Opposition to Defendants' Motion To Dismiss), Beverly will have no reason to seek judicial review of the investigation. *Cf. DRG Funding,* 76 F.3d at 1215 (concluding that an agency's decision to collect a debt by offset was not final because if the agency's "administrative review ends with the conclusion that the corporation has no debt to [the agency], the corporation will have no reason to seek a judicial determination of the proper procedure for collecting one"). Accordingly, the Court dismisses without prejudice Counts II–V for lack of subject matter

---

4. Beverly's recent administrative appeal does not affect this conclusion because an ALJ cannot invalidate DoL regulations. *See Acura of Bellevue v. Reich,* 90 F.3d 1403, 1408 (9th Cir.1996) (agency action is rendered nonfinal for purposes of judicial review only if the action may be modified or reversed by a pending administrative review). Defendants appear to concede this fact in their supplemental memorandum. *See* Defs.' Resp. to Pls.' Supp. Brf., at 7.

jurisdiction.[5]

## II. *Whether Beverly's Claims Are Ripe for Adjudication*

█ Defendants next contend that, even if Beverly's claims implicate "final" agency action, those claims are not ripe for judicial review.

> [The] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring [the Court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Laboratories*, 387 U.S. at 148–49, 87 S.Ct. 1507. Thus, courts are to strike a balance between the interest in deciding the issue in a more concrete factual setting and the hardship to the parties caused by postponing judicial review. *See Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 235 (D.C.Cir.1988); *State Farm*, 802 F.2d at 479; *Ciba–Geigy*, 801 F.2d at 434.

█ Under the "fitness of the issues" prong, courts consider: (1) whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review; (2) whether the court or the agency would benefit from postponing review until the policy in question has sufficiently "crystallized" by taking on a more definite form; and (3) whether the agency's action is sufficiently final. *See Abbott Laboratories*, 387 U.S. at 149–151, 87 S.Ct. 1507; *Cronin v. FAA*, 73 F.3d 1126, 1131 (D.C.Cir.1996); *Her Majesty the Queen*, 912 F.2d at 1532.

When evaluating the second "fitness" factor, courts consider such things as:

> [Whether] further administrative action is needed to clarify the agency's position ... [whether] the court's deliberations might benefit from letting the question arise in some more concrete and final form, ... or [whether] resolution of the dispute is likely to prove unnecessary.

*State Farm*, 802 F.2d at 479 (internal citations and quotation marks omitted).

█ The fitness of the issue for review is balanced against possible hardships to the parties caused by postponing review. In order to outweigh the interest in postponing review, the hardship must be "immediate, direct, and significant." *Cronin*, 73 F.3d at 1133; *State Farm*, 802 F.2d at 480. Ordinarily, financial expense is not a justification for early judicial review. *Abbott Laboratories*, 387 U.S. at 153, 87 S.Ct. 1507. An institutional interest is sufficient to outweigh deferral, however, if, in the absence of immediate judicial review, a party would be required to make significant changes in its everyday business practices or be exposed to the imposition of strong sanctions. *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171–172, 87 S.Ct. 1526 (1967) [hereinafter *Toilet Goods II*]; *Abbott Laboratories*, 387 U.S. at 154, 87 S.Ct. 1507; *State Farm*, 802 F.2d at 480.

As previously discussed, there is no question that the three regulations which Beverly challenges in Count I of the complaint are "final" agency action. Moreover, Beverly's challenge to each of the regulations is a legal one—whether the DoL exceeded its statutory authority in promulgating the regulations. *See Toilet Goods I*, 387 U.S. at 162, 87 S.Ct. 1520. With respect to the second "fitness" factor and the "hardship" prong, however, the differences in the challenged regulations mandate different results.

---

**5.** The Court further notes that, even if it had found that Counts II–IV implicated "final" agency action, the Court would nonetheless dismiss those counts as unripe. *See infra* note 6.

### 1. 20 C.F.R. §§ 655.400 and 655.410

 Plaintiffs challenge the regulation at 20 C.F.R. § 655.400, which permits the DoL to investigate facilities "either pursuant to a complaint or otherwise," as beyond the statutory authority granted by the INRA in 8 U.S.C. § 1182(m)(2)(E). Plaintiffs further contend that the regulation at 20 C.F.R. § 655.410, which allows the DoL to impose penalties when "there has been a violation of the attestation or subpart D or E of this part," is broader than allowed by the INRA because it could be used to impose penalties for violations for which no sanctions were authorized by the INRA.

The Court concludes that Beverly's pre-enforcement challenge to both regulations is premature. Both regulations are discretionary, and at this point the Court cannot discern whether the regulations will be enforced in the manner contemplated by plaintiffs or what reasons the DoL will give to justify any enforcement. *See Toilet Goods I,* 387 U.S. at 163, 87 S.Ct. 1520; *see also National Ass'n of Mfrs. v. U.S. Department of Labor,* 1996 WL 420868 at *8–9 (D.D.C.1996) (noting that a regulation similar to § 655.400 was discretionary, thus "the resolution of plaintiff's current challenge may 'prove unnecessary'") (citing *State Farm,* 802 F.2d at 479). Particularly with respect to § 655.410, whether the regulation is beyond the DoL's power under the statute "will depend not merely on an inquiry into statutory purpose, but concurrently on an understanding of what types of enforcement problems are encountered by [the DoL], [and] the need for various sorts of [sanctions] in order to effectuate the goals of the [INRA]." *See Toilet Goods I,* 387 U.S. at 163–164, 87 S.Ct. 1520; *see also National Ass'n of Mfrs.,* 1996 WL 420868 at *8–9 (denying pre-enforcement review of a regulation similar to § 655.400).

Furthermore, the hardship to Beverly does not outweigh the interest in postponing judicial review of these two regulations. Neither regulation requires Beverly to "make significant changes in [its] everyday business practices . . . [or] be exposed to the imposition of strong sanctions." *Abbott Laboratories,* 387 U.S. at 154, 87 S.Ct. 1507; *see also Toilet Goods II,* 387 U.S. at 164, 87 S.Ct. 1520. Because this is a pre-enforcement challenge and the regulations at issue are discretionary, any hardship to Beverly which may result from them is not immediate, as required by *Abbott Laboratories* and its progeny. *See Abbott Laboratories,* 387 U.S. at 152–53, 87 S.Ct. 1507; *Cronin,* 73 F.3d at 1133. "The primary injury alleged by [Beverly] is not a present hardship resulting from the regulations themselves, but rather a future injury that may result from enforcement of the regulations . . . . [i]f [Beverly] compl[ies] with the valid regulations, [it] will not be subject to the enforcement provision." *See National Ass'n of Mfrs.,* 1996 WL 420868 at *11 (quoting *Cronin* 73 F.3d at 1133). Accordingly, the Court dismisses as unripe the part of Count I challenging the regulations at 20 C.F.R. §§ 655.400 and 655.410, without prejudice.

### 2. 20 C.F.R. § 655.310(e)–(f)

 Beverly also claims that the regulation published at 20 C.F.R. § 655.310(e)–(f), which requires employers of H1.A nurses to pay the higher of the prevailing wage or the facility wage to all nurses, citizen and alien alike, exceeds statutory authority. The Court concludes that this challenge is ripe for review.

Unlike the regulations discussed in the previous subsection, subsections (e) and (f) of § 655.310 are not discretionary. *Compare* 20 C.F.R. § 655.410(a) ("The Administrator may assess a civil money penalty . . . for each affected person with respect to whom there has been a violation . . .") *with* 20 C.F.R. § 655.310(e) ("[T]he facility shall attest that it shall pay each nurse of the facility at least the prevailing wage for the occupation in the geographic area . . . . [and] shall pay the higher of the [prevailing] wage . . . or the [facility] wage . . . ."). Rather, the relevant provisions of

§ 655.310 are "self-executing, and have an immediate and substantial impact upon [Beverly]." *See Toilet Goods II*, 387 U.S. at 171, 87 S.Ct. 1526. Moreover, a more detailed factual record would not aid the Court in evaluating the validity of § 655.310(e)–(f). The provisions are straightforward: an employer of H1A nurses must pay each nurse the higher of two wages or violate the INRA. *See State Farm*, 802 F.2d at 485.

Moreover, the hardship prong weighs in favor of immediate judicial review. "The[ ] regulation[ ] purport[s] to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of [Beverly]." *See Abbott Laboratories*, 387 U.S. at 152, 87 S.Ct. 1507; *Toilet Goods II*, 387 U.S. at 171, 87 S.Ct. 1526. As soon as § 655.310 was promulgated in final form, Beverly was faced with the choice of paying all its nurses the higher of the prevailing wage of the geographic area or the facility wage (thus increasing its labor costs), or refusing to comply with the attestation requirements and facing civil money penalties of more than $1,000 for each affected person with respect to whom there had been a violation of the attestation requirement, plus back wages. *See* 20 C.F.R. § 655.410(a). Thus, even if the "fitness of issues" prong weighed in favor of deferring court consideration, the hardship to Beverly would still call for immediate judicial review.[6]

### III. *Whether Beverly Is Required To Exhaust Administrative Remedies*

 Defendants next contend that the Court should dismiss those portions of Count I still remaining for failure to exhaust administrative remedies. Section 10(c) of the APA provides that:

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704. In *Darby v. Cisneros*, 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), the Supreme Court held:

> [W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.

---

6. The Court also notes that, had it found that Counts III–IV implicated "final" agency action, it would nonetheless dismiss those counts as unripe. Although Beverly contends that those counts raise purely legal questions, and that the ALJ's consideration of them would be "futile," the Supreme Court has recognized that it is proper to postpone judicial review in favor of an administrative hearing, even if a challenge to the legality of an agency's regulations cannot be raised in that forum, if "the factual basis of the [claim] ... will ... be aired and ... more light [will] thrown on the [agency's] statutory and practical justifications for the regulation" as a result of an administrative hearing. *See Toilet Goods I*, 387 U.S. at 165–66, 87 S.Ct. 1520. An administrative hearing in this case would clarify the factual background of the Beverly investigation; the amended complaint itself demonstrates that at this stage the factual record is incomplete. *See Abbott Laborato-ries*, 387 U.S. at 149–51, 87 S.Ct. 1507; *Cronin*, 73 F.3d at 1131; *Her Majesty the Queen*, 912 F.2d at 1532. The hardship to Beverly as a result of postponing judicial review would not overcome the benefit of a more comprehensive factual record, since the sanctions imposed on Beverly are not effective until the completion of all stages of administrative review. *See* 20 C.F.R. § 655.410(c). The burden of responding to the DoL's investigation is not the type of effect on Beverly's day-to-day business which supports immediate judicial review. *See Abbott Laboratories*, 387 U.S. at 153–54, 87 S.Ct. 1507; *Toilet Goods II*, 387 U.S. at 171–72, 87 S.Ct. 1526; *cf. Atlantic Richfield Co. v. Department of Energy*, 769 F.2d 771, 783 (D.C.Cir.1984) (holding that responding to an allegedly ultra vires investigation was sufficient hardship because it would force the company to reveal material that would otherwise remain confidential).

Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final" under § 10(c).

*Id.* at 154, 113 S.Ct. 2539; *see also Marine Mammal Conservancy, Inc. v. Department of Agriculture,* 134 F.3d 409, 411 (D.C.Cir.1998).

Defendants contend that exhaustion of administrative remedies is required by internal DoL regulations. The regulations cited by defendants, however, do not support this conclusion, nor can the Court find any regulation or statutory provision which does. On the contrary, sections 655.410 and 655.420 of Title 20 of the C.F.R. indicate that review of the Administrator's decision by an ALJ is optional.[7] *Compare* 20 C.F.R. 655.410(c) (stating that penalties are due immediately for payment upon the assessment by the Administrator "or the decision by an administrative law judge where a hearing is requested"), *and* 20 C.F.R. 655.420(a)–(b) (stating that "[a]ny interested party desiring to request an administrative hearing ... may request a hearing in the following circumstances ..."), *with* 7 C.F.R. § 1.142(c)(4) (regulations governing adjudicatory proceedings instituted by the Secretary of Agriculture, stating that "no decision shall be final for purposes of judicial review except a final decision of the Judicial Officer upon appeal"); *see also Ciba–Geigy Corp. v. Sidamon–Eristoff,* 3 F.3d 40, 44–46 & n. 4 (2d Cir.1993) (contrasting the regulations at issue in that case with the regulations at issue in *Darby* ). Thus, the Court concludes that Beverly was not required to exhaust administrative remedies before bringing its pre-enforcement challenge to the relevant regulation in this court.[8]

## IV. *Statute of Limitations and Laches*

Finally, defendants contend that Beverly's remaining claim, its pre-enforcement challenge to the validity of 20 C.F.R. § 655.310(e)–(f), is barred by the statute of limitations and laches. As an initial matter, the Court notes that the doctrine of laches does not apply to Beverly's remaining APA challenge. *See Spannaus v. U.S. Department of Justice,* 824 F.2d 52, 55 (D.C.Cir.1987); *Walters v. Secretary of Defense,* 725 F.2d 107, 111–14 (D.C.Cir. 1983). Rather, Beverly's claim is governed by the six-year statute of limitations set forth at 28 U.S.C. § 2401. *See Impro Prods., Inc. v. Block,* 722 F.2d 845, 850 (D.C.Cir.1983).

The parties disagree as to when Beverly's pre-enforcement challenge to the regulation accrued. The prevailing wage regulation was originally published as an "Interim Final Rule" on December 6, 1990, effective as of that date. *See* 55 Fed.Reg. at 50509–10. However, when it published the "Interim Final Rule", the DoL explained that "comments received during the comment period on the proposed rule continue to be considered" and that a "final rule will be published at a later date[, t]he preamble [of which] ... will discuss fully the comments received on the proposed rule and the interim final rule, and, where appropriate, the interim

---

**7.** Although defendants did not cite it, the Court notes that 20 C.F.R. § 655.415(c)(3) provides that the written notice of the Administrator's decision must inform the parties that "in the absence of a timely request for a hearing [before an ALJ] ... the determination of the Administrator shall become final and not appealable." The Court concludes that the "not appealable" language of this section refers to administrative appeals only, not judicial review, particularly in light of the explicit language in other regulations which have the effect of requiring exhaustion of administrative remedies as a prerequisite to judicial review.

**8.** Defendants contend that even if the DoL's regulations do not require exhaustion of administrative remedies, Beverly should be required to exhaust the non-mandatory administrative remedy that it has invoked (an ALJ hearing). *See Acura,* 90 F.3d at 1409 n. 2. The Court disagrees; as previously discussed, Beverly's ALJ appeal is independent of its remaining pre-enforcement claim. *See supra* note 4.

final rule will be amended." *Id.* at 50502. The final rule was ultimately published on January 6, 1994. *See* 59 Fed.Reg. 874 (1994). Defendants contend that Beverly's challenge to the DoL regulation accrued on December 6, 1990. Beverly, however, claims that it accrued, at the earliest, in January 1994, because prior to that time there was no "final agency action" to challenge.

The Court agrees with defendants that the "Interim Final Rule" published on December 6, 1990, was "final" agency action which could have been challenged under the APA. The Court of Appeals has held that, although labeling a rule as "interim final" is confusing,

> [t]he key word in the title "Interim Final Rule," unless the title is to be read as an oxymoron, is not interim, but final. "Interim" refers only to the Rule's intended duration—not its tentative nature. The designation of the ... effective date could only have meant—and, therefore, put the public on notice of that meaning—that the regulation was in final form when published.

*Career College Ass'n v. Riley,* 74. F.3d 1265, 1268 (D.C.Cir.1996). Thus, any challenge which Beverly is making to the interim final rule accrued in December of 1990 and thus is time-barred.

▉ To the extent that Beverly's claim is a pre-enforcement challenge to the codification of the January 1994 final rule, however, that claim is timely. Although Beverly may have had some idea of what the January 1994 final rule would encompass prior to its publication, Beverly could not have been expected to file a claim challenging a final rule which had not yet been published. *Cf. Montana v. Clark,* 749 F.2d 740, 744 (D.C.Cir.1984) (an agency decision not to amend long-standing rules after a notice and comment period is reviewable agency action). Until January 1994, Beverly did not know whether the final rule would resemble the interim final rule, or whether the DoL would take heed of those commentators who had "as-

sert[ed] that the proposed regulations go beyond the statute and Congressional intent," *see* 55 Fed.Reg. at 50501, and change the prevailing wage regulations. Accordingly, the Court concludes that Beverly's pre-enforcement challenge to the codification of the January 1994 final rule is timely.

**CONCLUSION**

For all the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss. The Court dismisses without prejudice Counts II–V of plaintiffs' amended complaint, as well as that portion of Count I alleging that the DoL exceeded its statutory authority when it promulgated 20 C.F.R. §§ 655.400 and 655.410. An appropriate Order accompanies this Opinion.

**ORDER**

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendants' motion to dismiss is granted in part and denied in part. It hereby further is

ORDERED, that Counts II–V of plaintiffs' amended complaint, as well as that portion of Count I alleging that the Department of Labor exceeded its statutory authority when it promulgated 20 C.F.R. §§ 655.400 and 655.410, are dismissed without prejudice.

SO ORDERED.