**AMERICAN COALITION FOR COMPETITIVE TRADE,**
Petitioner

v.

**William J. CLINTON and United States of America, Respondents**

Government of Canada, Intervenor.

No. 97–1036.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1997.

Decided Nov. 14, 1997.

As Amended Nov. 21, 1997.

Donald R. Dinan, Washington, DC, argued the cause and filed the briefs for petitioner.

Douglas Letter, Attorney, United States Department of Justice, argued the cause for respondents, with whom Frank W. Hunger, Assistant Attorney General, Mary Lou Leary, United States Attorney, Stephen W. Preston and Anne M. Lobell, Attorneys, United States Department of Justice, Washington, DC, were on the brief.

Homer E. Moyer, Jr. and Mark V. Holmes, Washington, DC, were on the brief for intervenor Government of Canada.

Elliot J. Feldman and Stephen M. Truitt, Washington, DC, were on the brief for amicus curiae Gouvernement du Quebec.

Robert E. Herzstein and Perry S. Bechky, Washington, DC, were on the brief for amicus curiae Government of Mexico.

Rufus E. Jarman, New York City, was on the brief for amicus curiae Customs and International Trade Bar Association.

Before: WALD, WILLIAMS and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Petitioner, the American Coalition for Competitive Trade ("ACCT"), has filed an original action in this court to challenge the constitutionality of the binational panel review provisions in the United States–Canada Free–Trade Agreement Implementation Act of 1988, Pub.L. No. 100–449, 102 Stat. 1851, and the North American Free Trade Agreement Implementation Act, Pub.L. No. 103–182, 107 Stat.2057 (1993) ("NAFTA Act"), which implement the North American Free Trade Agreement with Canada and Mexico, Dec. 17, 1992, Can.-Mex.-U.S., 32 I.L.M. 605 (1993)("NAFTA").

We conclude that petitioner does not meet the constitutional requirements for standing and does not satisfy the jurisdictional requirements of the NAFTA Act, requirements whose constitutionality we uphold. Accordingly, we dismiss this case.

## I. BACKGROUND

Any private party that falls within the definition of an "interested party" may bring an administrative claim to the International Trade Administration of the Department of Commerce charging that an importer to the United States is "dumping" his goods at below-market prices in order to harm his American competitors, or is unfairly benefitting from subsidies from his nation of origin. Once an interested party has made such a charge, the Department of Commerce determines whether dumping has occurred or whether an exporting nation has provided a subsidy. *See* 19 U.S.C. §§ 1671b(b), 1673b(b) (1994). If the Commerce Department finds dumping or a subsidy, the United States International Trade Commission then determines whether the importer's behavior has actually injured or threatened to injure a U.S. industry. *See* 19 U.S.C. §§ 1671b(a),

1673b(a) (1994). The statutes define "interested party" broadly to include, *inter alia*, "a manufacturer, producer, or wholesaler in the United States of a domestic like product"; "a certified union or recognized union or group of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States of a domestic like product"; and "a trade or business association a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States." 19 U.S.C. § 1677(9)(C)-(E) (1994).[1]

The NAFTA Act creates a special procedure for reviewing such administrative determinations when they concern goods imported from Canada or Mexico. Under this scheme, any "interested party" that appeared in the administrative proceedings before the Commerce Department or the International Trade Commission may request a binational panel to review the decisions those domestic agencies made. *See* 19 U.S.C.A. § 1516a(g)(8), 1516a(f)(3) (Supp.1997). Panel members are selected by the United States and the other nation involved, with the United States Trade Representative appointing this country's panel candidates. *See* 19 U.S.C.A. § 3432(a)(1)(D)-(E) (Supp.1997); NAFTA Annex 1901.2, 32 I.L.M. at 687. These panels apply the substantive law of the importing country. *See* NAFTA Art.1904(2), 32 I.L.M. at 683. Their decisions are binding and domestic judicial review of panel determinations is prohibited. *See* 19 U.S.C.A. § 1516a(g)(2) (Supp.1997). While either of the governments involved may request a binational "extraordinary challenge committee" to review a panel decision, private parties cannot initiate such a process. *See, e.g.*, 19 U.S.C.A. § 1516a(a)(5)(C)(ii) (Supp.1997); NAFTA Art.1904.13, 32 I.L.M. at 683; NAFTA Annex 1904.13, 32 I.L.M. at 688. The binational panels, however, are only empowered to uphold the final determinations of domestic agencies or to remand cases to these agencies for further action consistent with the panel's decision. They do not consider the constitutionality of the binational panel review system under United States

law. *See* NAFTA Art.1904.8, 32 I.L.M. at 683.

Instead, Congress has granted this court exclusive original jurisdiction to review all constitutional challenges to the binational panel review provisions. *See* 19 U.S.C.A. § 1516a(g)(4)(A) (Supp.1997). Under the NAFTA Act, 19 U.S.C.A. § 1516a(g)(4)(C) (Supp.1997), "an interested party" that participated in a binational review panel proceeding may commence such a constitutional challenge "within 30 days after the date of publication in the Federal Register of notice that binational panel review has been completed."

ACCT, "a non-profit organization established for the purpose of protecting American jobs and workers from unfair trade practices," Petitioner's Brief at 5, contends that the binational panel review system infringes on the sovereignty of the United States and violates several constitutional provisions, including the Appointments Clause, Article III, and the Due Process Clause. ACCT also challenges the constitutionality of section 1516a(g)(4)(C)'s exhaustion requirement, and does not claim to meet the provision's criteria. Specifically, ACCT does not allege that it or any ACCT members have participated in any binational panel review proceeding whose completion was published within thirty days of ACCT's filing of this action.

According to the affidavit of William J. Gill, ACCT's president, "members of the Coalition work in industries which have suffered material injury as determined by the U.S. International Trade Commission in antidumping and countervailing duty cases concerning imports from Canada and Mexico. Certain of these cases have been appealed to the binational panels where the decision of the United States government was overturned by the binational panel causing significant numbers of our members [to lose] their jobs, *i.e.*, the *Softwood Lumber* cases." Affidavit of William J. Gill, Petitioner's Reply Brief App. at 1–2 (internal citations omitted) ("Gill Affidavit"). The "*Softwood Lumber*

---

1. "The term 'domestic like product' means a product which is like, or in the absence of like, most similar in characteristics and uses with, the

[imported] article subject to [the antidumping and countervailing duty laws]." 19 U.S.C. § 1677(10) (1994).

cases" is an apparent reference to a 1994 suit by the Coalition for Fair Lumber Imports. The Coalition for Fair Lumber Imports had participated in a binational panel proceeding as an interested party and, having lost in that proceeding, brought suit in this court to challenge the constitutionality of the binational panel review system. The parties settled this suit, however, before the court issued any decision on the merits. *See Coalition for Fair Lumber Imports v. United States,* No. 94–1627 (D.C.Cir. filed Sept. 14, 1994, withdrawn by voluntary motion to dismiss Jan. 5, 1995). ACCT states that it has no evidence that any of its members have ever participated in a binational panel proceeding.

## II. ANALYSIS

### A. *Standing*

■ As the party that seeks to invoke this court's jurisdiction, ACCT is required to "clearly ... allege facts" demonstrating its standing under Article III. *United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (quoting *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975)). ACCT has not established the causation necessary to meet the requirements of constitutional standing.

■ Article III standing contains three "irreducible" elements. First, the petitioner must have suffered an injury that "is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992) (citations and internal quotation and alteration marks omitted). For an association to have

standing to sue on behalf of its members, its members must " 'otherwise have standing to sue in their own right.' " *Pennell v. City of San Jose,* 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988) (quoting *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)); *see also Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers v. Brock,* 477 U.S. 274, 282, 106 S.Ct. 2523, 2529, 91 L.Ed.2d 228 (1986); *Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441 ("[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

■ Petitioner has totally failed to establish the requisite causal connection between its alleged injury and the binational panel system.[2] ACCT does not contend that its standing stems from participation in any binational panel proceeding. Indeed, it concedes that it has no evidence that any of its members has ever participated in a binational panel proceeding. Instead, ACCT recites the importance of enforcing federal laws against dumping and import subsidies and reviews statistical evidence about the adverse consequences that NAFTA has allegedly had on income equality and exporting in the United States. But ACCT never identifies any specific instances in which a binational panel decision—or even the general binational panel scheme—harmed an ACCT member.

In the only affidavit attached to petitioner's filing, ACCT President William J. Gill does little more to explain why ACCT's alleged injury is causally connected to the binational panel system. Gill alleges, for instance, that "[m]any of [ACCT's] members have lost their jobs as a result of NAFTA as certified by the U.S. Department of Labor and are currently receiving NAFTA adjustment assistance from the federal govern-

---

**2.** This failure obviates the need for us to address ACCT's claims under the other two prongs of the
test for Article III standing.

ment." Gill Affidavit at 1. However, Gill fails to allege any connection between an ACCT member and a *binational panel proceeding* rather than NAFTA in general.

This is simply not enough. With work or with time, ACCT may be able to locate a member who has constitutional standing to challenge the binational panel review system. But it has not yet successfully borne that burden. *See Hays,* 515 U.S. at 742–43, 115 S.Ct. at 2435.

### B. *The NAFTA Act's Jurisdictional Requirements*

■ ACCT also fails to satisfy the statutory requirements for challenging the constitutionality of the binational panel system. The NAFTA Act grants this court exclusive original jurisdiction over constitutional attacks on the binational panels. *See* 19 U.S.C.A. § 1516a(g)(4)(A) (Supp.1997); *see also National Council for Industrial Defense, Inc. v. United States,* 827 F.Supp. 794, 797–800 (D.D.C.1993) (holding that section 1516a(g)(4)(A) grants the D.C. Circuit exclusive jurisdiction over all constitutional challenges to the binational panels). It further provides, in 19 U.S.C.A. § 1516a(g)(4)(C) (Supp.1997), that only "an interested party" who participated in a binational panel proceeding may commence a constitutional challenge to the binational panel scheme and requires these interested parties to file a constitutional action in this court "within 30 days after the date of publication in the Federal Register of notice that binational panel review has been completed."

ACCT does not assert that it satisfies section 1516a(g)(4)(C)'s exhaustion requirement. In addition, it concedes that at least some of its members fall within the definition of "an interested party"; in an appropriate case, they could pursue the administrative steps needed to acquire statutory standing to challenge the constitutionality of the binational panels. (As noted above, the NAFTA Act defines "interested party" broadly. *See* 19 U.S.C. § 1677(9)(C)-(E) (1994).) ACCT, however, assumes that it already has Article III standing to challenge the constitutionality of the binational panels and contends that section 1516a(g)(4)(C) is unconstitutional because it imposes an exhaustion requirement that does not allow everyone with Article III standing to sue.[3]

ACCT mischaracterizes the nature of the issue before us.[4] Article III sets the maximum boundaries of permissible standing, but does not preclude Congress from creating additional statutory exhaustion requirements. To be sure, a statute that totally precluded judicial review for constitutional claims would clearly raise serious due process concerns. *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988); *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623 (1986); *Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974); *Bartlett v. Bowen,* 816 F.2d 695, 703 (D.C.Cir.1987). Along the same lines, there may well be limits as to how severely Congress can restrict the route to judicial review of constitutional challenges when it keeps

---

**3.** ACCT may also be objecting to the fact that Congress has imposed a ripeness requirement in providing that no constitutional claims may be raised against the binational panel system until one of the binational panels has issued a final judgment. *See* 19 U.S.C.A. § 1516a(g)(4)(C) (Supp.1997). Such a claim, however, is meritless. The ripeness requirement in section 1516a(g)(4)(C) is entirely reasonable and quite common. It ensures that constitutional challenges to the binational panels are sufficiently concrete to allow for meaningful review and prevents this court from issuing advisory opinions in violation of Article III. *See e.g., Abbott Lab. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967) (noting basic rationale of ripeness doctrine); *Committee For Effective Cellular Rules v. FCC,* 53 F.3d 1309,

1316 (D.C.Cir.1995) (holding that agency action must be final before review is available).

**4.** In addition, ACCT's concession that it does not meet the requirements of section 1516a(g)(4)(C) renders its decision to bring suit in this court, rather than a United States district court, inexplicable. Section 1516a(g)(4)(C) is the only source of this court's original jurisdiction over constitutional challenges to the binational panel system. Even if that statute should be found unconstitutional, ACCT has no other ground for bringing its action in the court of appeals. *See* 28 U.S.C. § 1331 (1994) ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

that route partially open. This, however, is not such a case. Section 1516a(g)(4)(C) merely establishes reasonable requirements that ensure that plaintiffs have a concrete stake in the proceedings and have exhausted their administrative remedies before they may challenge the constitutionality of the binational panel review system.

Indeed, section 1516a(g)(4)(C)'s exhaustion requirement is so typical that striking it down as unconstitutional could render a substantial portion of the United States Code open to constitutional attack. Many agency adjudication schemes require petitioners to exhaust their administrative remedies before bringing their constitutional claims to Article III courts. For instance, in *Cronin v. FAA,* 73 F.3d 1126 (D.C.Cir.1996), petitioner challenged the constitutionality of Federal Aviation Administration regulations establishing the procedures under which air carriers test their employees for alcohol and drug use. *See id.* at 1133. This court, however, refused to consider Mr. Cronin's constitutional challenge because the governing administrative statute, 49 U.S.C. § 46110(d) (1994),[5] precluded judicial review of any claims petitioner had failed to raise in his objections to the regulations during administrative rulemaking. *See Cronin,* 73 F.3d at 1133 & n. 7. Similarly, in *Steadman v. Governor, U.S. Soldiers' & Airmen's Home,* 918 F.2d 963 (D.C.Cir.1990), this court held that the Federal Service Labor–Management Relations Act required former federal employees who alleged that their discharge violated their due process and statutory rights to first seek statutory relief before the Federal Labor Relations Authority before pursuing their constitutional claim in United States District Court. *See id.* at 965; *see also Wallace v. Lynn,* 507 F.2d 1186, 1189–90 (D.C.Cir.1974) (requiring plaintiff to exhaust administrative

remedies before seeking relief in district court on constitutional ground).[6]

ACCT's attempt to distinguish its challenge to section 1516a(g)(4)(C) from an attack on all statutes that first channel petitioners with constitutional objections into agency adjudication is unconvincing. ACCT argues that Congress enacted section 1516a(g)(4)(C) because it was gravely concerned about the constitutionality of the binational panel review system and accordingly decided to insulate this scheme from constitutional review. But, even if such an argument were persuasive, ACCT has presented absolutely no evidence to support its interpretation of legislative motivation. To the contrary, the statutory scheme itself, which vests original jurisdiction over constitutional challenges in this appellate court, illustrates Congress' desire to expedite judicial review of the binational panel scheme, while limiting the petitioner class to people who have exhausted their administrative remedies and clearly have constitutional standing. *See* 19 U.S.C.A. § 1516a(g)(4)(A) (Supp.1997). The legislative history only confirms this view. *See* H.R.Rep. No. 100–816, pt. 1, at 33 (1988) ("The expedited process ensures that if there is any challenge to the constitutionality of the binational panel review system, any resulting uncertainty about implementation of these provisions of the Agreement will be resolved quickly."); H.R.Rep. No. 100–816, pt. 4, at 23 (1988) ("Constitutional challenges can only be commenced after an exhaustion of the binational panel review process. The approach was selected to avoid any potential problems with standing. Second, an exhaustion requirement may eliminate the basis for a constitutional challenge. For example, a party who fears that the panel process may result in the denial of due process will hopefully have a different view after the process is over.").

---

5. The statute provides that a reviewing "court may consider an objection to an order of the [DOT] Secretary or [the FAA] Administrator only if the objection was made in the proceeding conducted by the Secretary or Administrator or if there was a reasonable ground for not making the objection in the proceeding." *Id.*

6. To be sure, administrative agencies (particularly binational ones) cannot resolve constitutional issues. Instead, the premise of administrative

exhaustion requirements for petitioners with constitutional claims is that agencies may be able to otherwise address petitioners' objections, allowing the courts to avoid unnecessary constitutional decisions. *See, e.g., Wallace,* 507 F.2d at 1189–90; *Nat'l Treasury Employees Union v. FLRA,* 986 F.2d 537, 540 (D.C.Cir.1993); *Meredith Corp. v. FCC,* 809 F.2d 863, 872 (D.C.Cir. 1987).

In sum, ACCT has not met the requirements of section 1516a(g)(4)(C), and has provided no ground on which to rule that this provision is unconstitutional.

### III. CONCLUSION

ACCT has failed to satisfy Article III's standing requirements for challenging the constitutionality of the binational panel review system. It also concededly fails to meet the NAFTA Act's statutory exhaustion requirements, requirements that we find constitutional. For the foregoing reasons, we therefore dismiss petitioner's claim.

*So ordered.*