*77 ORDER
AMANDA L. ROCKMAN*, Associate Judge.
INTRODUCTION
The Court must determine whether to uphold the decision of the Grievance Review Board (hereinafter GRB). The Court reverses and remands the agency decision due to a supervisorial failure to afford the petitioner meaningful and minimal pre-de-privation procedural due process. The analysis of the Court follows below, including the ramifications of this decision.
PROCEDURAL HISTORY
The petitioner, Karen Litscher, by and through Attorney Mark L. Goodman, filed her Petition for Administrative Review of Grievance Review Board Decision on November 18, 2008 See Employment Relations Act of 2004 (hereinafter ERA), 6 HCC § 5.35e; see also Ho-Chunk Nation Rides of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 63(A)(1)(a). On November 18, 2008, the Court entered the Scheduling Order, setting forth the time-lines and procedures to which the parties should adhere during the pendency of the appeal. In response, the respondents, by and through Ho-Chunk Nation Department of Justice (hereinafter DOJ), submitted the administrative record on November 25, 2008. See HCN R. Civ. P. 63. On December 17, 2008, the petitioner submitted a Petitioner’s Initial Brief. The respondent filed a timely Response Brief Regarding Damage A ward for Due Process Violation on January 23, 2009. Id. The petitioner filed her Petitioner’s Reply Brief on February 4, 2009. Id.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. VI—Executive
Sec. 1. Composition of the Executive.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing, Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Art. VII—Judiciary
Sec. 6. Powers of the Tribal Court
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law' and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
STATUTE OF LIMITATIONS & COMMENCEMENT OF CLAIMS ACT, 2 HCC § 14
Subsec. 4. Civil Action and Time Limitation, Civil actions may be commenced only within the periods as prescribed here:
e. All employment actions must be filed in the Trial Court within 30 calendar days of the final administrative grievance *78 review decision by the Grievance Review Board.
EMPLOYMENT RELATIONS ACT OF 2004, 6 HCC § 5
17. Ho-Chunk Nation Holidays.
a. All employees are eligible to observe the following recognized holidays.
Holiday Date Observed
New Year’s Day January 1
Good Friday (1/2 Day) Varies each year
Easter Varies each year
Memorial Day Last Monday in May
Corporal Mitchell Red Cloud Jr. Day July 4
Labor Day First Monday in September
Veteran’s Day November 11
Thanksgiving Day Fourth Thursday in November
Hocak Day Day after Thanksgiving
Christmas Eve (1/2 Day) December 24
Christmas Day December 25
New Year’s Eve (1/2 Day) December 31
c. Holiday Pay.
(1) Nonexempt employees will be paid double pay on the holidays worked. If a person does not work, he or she will receive eight (8) hours holiday pay at his or her regular rate.
Ch. V—Work Rules & Employee Conduct, Discipline, & Administrative Review
Subsec. 29. General Hours of Work and, Attendance.
e. Abandonment of Employment. An employee who is absent from his or her assigned work location without authorized leave for three (3) consecutive days or five (5) days in a twelve (12) month period shall be considered absent without authorized leave, and as having abandoned his or her employment. The employee shall be automatically terminated, unless the employee can provide the Nation with acceptable and verifiable evidence of extenuating circumstances justifying the absence(s).
Subsec. 31. Employee Discipline.
a. Depending on the nature of the circumstances of an incident, discipline will normally be progressive and should bear a reasonable relationship to the violation. Based on the severity of the employee conduct, progressive discipline may not be applicable. Supervisors imposing discipline shall afford Due Process to the employee prior to suspending or terminating any employee. Types of discipline include:
(1) Suspension.
(a) Under no circumstances will a suspension exceed ten (10) working days.
(b) It may be necessary to restrict an employee immediately from performing duties at the work site. These circumstances usually involve potential danger to the employee, co-workers or the public, or the employee’s inability to discharge assigned duties satisfactorily. In these situations, the following procedure is to be followed:
1 Once the employee is suspended, the supervisor taking the action to suspend an employee will immediately notify the Executive Director and prepare a written statement of action taken and the reasons for such action
2 The Executive Director will prepare, together with the supervisor, the statement of charges and document any supporting evidence.
3 As soon as possible after the initial action, the Executive Director will prepare written notification to the affected employee.
(c) In no event will the use of paid time be allowed during a period of sus *79 pension without pay. Should a paid holiday occur during a period of suspension without pay, the suspension period shall be extended by the number of holidays occurring during the suspension period.
(d) All suspensions shall be unpaid. No employee may be disciplined by issuance of a suspension with pay.
(e) A suspended employee who has been vindicated of any wrongdoing shall be compensated for lost wages and benefits.
(2) Termination.
b. The supervisor shall notify the Department of Personnel of all disciplinary actions.
Subsec. 33. Grievances.
a. Employees may seek administrative and judicial review only for alleged discrimination and harassment.
Subsec. 34. Administrative Review Process.
a. Policy.
(3) Following a Board decision, the employee shall have the right to file an appeal with the Ho-Chunk Nation Trial Court (Court).
d. Request for a Hearing. An employee must request a hearing within five (5) business days of the date the disciplinary action was taken. At the time the employee requests a hearing, he or she must inform the Department of Personnel if he or she is to be represented by an attorney. If so, the attorney must also file for an appearance with Department of Personnel within five (5) days of the date the employee requested a hearing. Failure to request the hearing within this time frame will result in the forfeiture of a hearing by the Board.
g. Proceedings of the Board. At the commencement of a hearing before the Grievance Board of Review [sic ], the Department of Personnel will discuss with the Board their responsibilities and obligations including, but not limited to, the following:
(7) At the conclusion of the presentation of testimony and evidence, the Board will privately deliberate and make a decision within five (5) calendar days. No record of the Board’s deliberation will be made. The decision of the Board shall describe the facts of the case and determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules.
Subsec. 35. Judicial Review.
c. Judicial review of a grievance involving suspension, termination, discrimination or harassment may proceed to the Ho-Chunk Nation Trial Court only after the Administrative Review Process has been exhausted through the Grievance Review Board. An employee may appeal a Board decision to the Trial Court within thirty (30) calendar days of when the Board decision is served by mail.
e. Under this limited waiver of sovereign immunity, the Court shall review the Board’s decision based upon the record before the Board. Parties may request an opportunity to supplement the record in the Trial Court, either with evidence or statements of their position The Trial Court shall not exercise de novo review' of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary or capricious.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 24. Substituting, Intervening and Joining Parties.
If a party becomes incompetent or transfers his/her interest or separates from some official capacity, another party may be substituted as justice requires. A party with an interest in an action may *80 intervene and be treated in all respects as a named party to the action. To the greatest extent possible, all persons with an interest will be joined in an action if relief cannot be accorded among the current parties without that person, or the absent person’s ability to protect their interests is impeded unless they are a party. Failure to join a party over whom the Court has no jurisdiction will not require dismissal of the action unless it would be impossible to reach a just result without the absent party. The Court will determine only the rights or liabilities of those who are a party to the action or eligible for relief as part of a class certified under Rule 9.
Rule 47. Consolidation and Separation of Action.
(A)Consolidation. When actions involving a common question of law or fact are pending before the Court, the Court may order a joint hearing or trial of any or all the matters in issue in the actions; the Court may order all the actions consolidated; and the Court may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in accordance with the Rides of Appellate Procedure.
(C)Motion to Modify. After the time period in which to file a Motion to Amend, of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
*81 (D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
Rule 63. Judicial Review of Administrative Adjudication,
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
1. The following laws provide for filing within thirty (30) days:
a. Employment Relations Act of 2004
(B) The Petition for Administrative Review shall identify the petitioner making the request by name and address. The Petition for Administrative Review must also contain a concise statement of the basis for the review, i.e., reason or grounds for the appeal, including a request to supplement the evidentiary record pursuant to HCN R. Civ. P. 63(D)(l)(a-b), if applicable. The statement should include the complete procedural history of the proceedings below’. The petitioner must attach a copy of the final administrative decision to the Petition for Administrative Revie w.
(D) The commission or board, designated as the respondent, must transmit the administrative record to the Court within fifteen (15) days after receipt of the Petition for Administrative Review. The administrative record shall constitute the sole evidentiary record for judicial review of the agency decision....
(E) Within thirty (30) calendar days of filing the Petition for Administrative Review, the petitioner shall file a written brief, an Initial Brief .... The respondent shall have thirty (30) calendar days after filing of the brief in which to file a Response Brief. After filing of respondent’s Response Brief the petitioner may file the Reply Brief within ten (10) calendar days.
(G) At the discretion of the Court, the Court may require an oral argument. The Court shall decide the order of the presentation, the length of time each party is permitted for their presentation, the issues to be addressed in oral argument, and such other matters as may be necessary. An order entitled, Notice of Oral Argument, shall include all such matters and shall be served on all parties at least ten (10) calendar days prior to the date set for argument,
(H) The Court shall decide all cases upon the administrative record, briefs, memoranda and statements filed plus the oral argument, if heard.
*82 (J) The Court maintains discretion to grant continuances upon a showing of good cause.
(L) Either party may appeal the Trial Court’s decision to the Supreme Court.
FINDINGS OF FACT[1]
1. The petitioner, Karen Litscher, was formerly employed as a swimming pool lifeguard at the Ho-Chunk Nation House of Wellness (hereinafter House of Wellness), located on trust lands at S2845 White Eagle Road, Baraboo, WI 53913. The House of Wellness is a sub-division within the Ho-Chunk Nation Department of Business, an executive department with principal offices located on trust lands at Ho-Chunk Nation Headquarters, W9814 Airport Rd., Black River Falls, WI 54615. See Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. VI, § 1(b) The Ho-Chunk Nation (hereinafter HCN or Nation) is a federally recognized Indian tribe. See 73 Fed.Reg. 18553 (Apr. 4, 2008).
2. The respondent, GRB, is an “agency within the [Ho-Chunk Nation] Department of Personnel,” an executive department with principal offices located at HCN Headquarters. Janet Funmaker v. Libby Fairchild, in her capacity as Executive Dir. at HCN Dep't of Pers., et al., 7 Am. Tribal Law 61, 64 (HCN S.Ct., Aug. 31, 2007); see also Const., Art. VI § 1(b).
3. On December 28, 2007, the petitioner filed an initial pleading with the Court in CV 07-100, seeking judicial review of the following alleged agency action:
Petitioner’s requests for relief were granted in part and denied in part by the GRB. GRB awarded petitioner $3500 in monetary damages without explanation as to how this amount was determined. GRB found one reason given for petitioner’s termination to be unsubstantiated. GRB agreed petitioner’s due process rights were violated but failed to award full monetary relief and failed to order reinstatement and other relief.
Karen Listcher v. Ho-Chunk Nation Review Bd, CV 07-99-100 (Sept. 22, 2008) at 1.
4. On December 7, 2006, the petitioner filed a grievance with the HCN Personnel Department “following a decision of the management of the House of Wellness to execute disciplinary action based on a violation of the Ho-Chunk Nation’s employment law.” Decision, GRB-333.06T (GRB, Nov. 20, 2007) (hereinafter Decision) at 1,[2] see also ERA, § 5.34d. This violation includes “releasing confidential information involving patrons and business contacts of the House of Wellness.” Admin. Record,, Disciplinary Action Form (Dec. 1, 2006).
5. Specifically, the petitioner grieved her termination issued on December 1, 2006, and the GRB “determin[ation of] whether the management of the House of Wellness adhered to 6 HCC § 5 Employment Relations Act in termination [sic] of Ms. Karen Litscher.” Decision at 1.
*83 6. On November 20, 2007, the GRB conducted a hearing.[3] Id. at 1.
7. The GRB dismissed the charges relating to the alleged absence of progressive discipline and retaliation by management.[4] Id. at 6-7.
8. The GRB further determined that the information provided to the petitioner in the Disciplinary Action Form on December 1, 2006, regarding a prior Incident Reporting Form #2617 issued on November 15, 2006, was unfounded. Id. at 7; see also Respondent’s Br., Attach. A-l, Admin. Record, Disciplinary Action Form (Dec. 1, 2006).
9. The GRB awarded the petitioner $3,500.00 in monetary damages, due to its finding that
the management failed to seek out the Grievant’s side of the story in some of the charges contained within the December 1, 2006 termination prior to enforcing the law. Uncharacteristically, the violations of Due Process did not “sanitize” the Grievant’s unlawful misconduct addressed in her termination. For this reason, the Board collectively determined a remedy they felt held a reasonable relationship to the violation of law and issued a determination for the Executive Director of Personnel to provide a monetary award.
Decision at 7 (emphasis added).
10. On September 20, 2008, the Court found that the specified amount of damages awarded to the petitioner were arbitrary and capricious, absent any findings of fact as to a concrete basis for the award, e.g. back pay, lost wages, etc. See Karen Litscher v. Ho-Chunk Nation Grievance Review Board, CV 07-99-100 (HCN Tr. Ct., Sept. 20, 2008) at 19.
11. Thus, the Court remanded the underlying case for reconsideration and instructed the GRB to “articulate the nature and scope of the due process violations, and the basis for award of damages in the decision.” Id. at 19.
12. On October 28, 2008, the GRB reconvened and held a hearing in response to the remand Decision, GRB-333.06T (GRB, Nov. 3, 2008) (hereinafter Remand,) at l,[5] see also ERA, § 5.34d.
13. The GRB failed to articulate the nature and scope of the due process violations, instead asserting that the “monetary award was based on a loss of wages, but an amount the Board felt was commensurate with a procedural deviation on the part of management.” Id. at 2.
*84 14. Moreover, the GRB noted that it had previously “pinpointed the exact period of testimony when they suspected that the procedure to ensure due process came into question which could satisfy at least one portion of the Court’s reasons for reconsideration.” Id. at 2, lines 10-12. The GRB goes further to identify this “pinpoint” whereby supervisor Scott Gilbeck testified before an Unemployment Insurance (UI) tribunal stating that “he felt it would not have matter whether or not management had spoken with the employee because disciplinary action was imminent.” Id. at 2, lines 14-16.
15. The GRB additionally found that,
this [testimony before the UI tribunal] select portion of the audio transcript did not encompass the same admission from all management nor did it affirm that management completely failed to give her a reasonable opportunity to tell her side of the story.
Id. at 2, lines 16-19 (emphasis in original).
16. The GRB also extensively commented on its understanding of the nature of procedural due process, going so far as to note that,
... .[D]ue process violations are [not] created equally. Our belief is that in certain cases, an employee’s conduct will be such that a minor due process violation will not overcome the substance of a termination of the correctness of the termination on the merits. Consider the following example. Consider a casino employee who brings a gun to work and shorts a customer without provocation, it cannot be the case that if his or her supervisor failed to see the employee’s side of the story before terminating the employee that the law would require the casino to continue to employee this person. This rationale would defy any logical standard of reason.
Id. at 2, lines 21-28.
17. The GRB found specifically in relation to the instant case that the amount of $3,500.00 for unspecified damages was
the Board’s way of quantifying (subjectively) the due process shortcomings. If fullback pay represents the worst violation, $3,500 represents something less than that. It is the Board’s judgment about the severity (or lack thereof) of the violation ... for this particular case.
Id. at 3.
18. The GRB overturned and withdrew the award $3,500.00 to the petitioner, stating it could not relate the amount to any specific claim since the GRB did not find that the petitioner was entitled to compensation for loss of wages. Id. at 4, lines 3-7.
19. The GRB additionally included “some relevant points” in the last section of the Remand that state that “the figure (reflecting the loss of wages) presented to the Judiciary was not presented to the Board,” characterizing this omission as an ambiguous request for relief and that such a “vague and broad request for relief [could] only prompt the likelihood of an arbitrary and capricious award.” Id. at 4, line 10-15.
20. The GRB included legal analysis on Supreme Court precedent and the Employment Relations Act regarding the ability of the GRB to award monetary relief for lost wages, noting that
If the ability to issue an “appropriate remedy” under the ERA and under Funmaker is to yield to only prescribing relief that is “justifiable” by calculation, the Board is ill-equipped to legally substantiate an award of any amount and *85 takes great caution when issuing any forthcoming relief.
Id. at 5, lines 6-9.
21. On November 18, 2008, the petitioner filed a Petition for Administrative Review of the aforementioned remand decision by the GRB, stating that “the Board was unable to articulate the basis for its award of damages.” Pet. at 2. The petitioner requested a declaratory judgment in her favor and a monetary award of $16,000 to compensate the petitioner for wages lost during the time period between her termination and her current employment, based on the opposing parties admission that “some due process violations did occur” in regards to the termination Pet. at 3.
DECISION
The Court thoroughly examined the origin of administrative agency review and associated standards of review within a prior case. Regina K. Baldwin et al. v. Ho-Chunk Nation et al., CV 01-16, -19, - 21 (HCN Tr. Ct., Jan. 9, 2002) at 12-26. The Court directs the parties to that decision for a comprehensive discussion.[6] For purposes of this case, the Court reproduces the portion of the discussion dealing with formal on the record adjudication.
Executive agencies may engage in formal on the record adjudication, resulting in the promulgation of rules through the formation of a body of case precedent. See, e.g., Dickinson v. Zurko, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998); Bowman Transp. v. Ark.-Best Freight Sys., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In reviewing adjudicative rulemaking, as well as other forms of agency action, courts begin by recognizing that Congress intended the Administrative Procedure Act to “estab-lishf ] a scheme of ‘reasoned decisionmak-ing.’ ”[7] Allentown, 522 U.S. at 374, 118 S.Ct. 818 (quoting Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Courts then perform a two-tiered analysis, determining whether the adjudicative rule satisfies a substantial evidence standard, and, if so, whether the rule escapes a designation of arbitrary and capricious.[8]
The two (2) inquiries represent “ ‘separate standards.’ ” Bowman, 419 U.S. at 284, 95 S.Ct. 438 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Consequently, a court “may properly conclude! ] that, though an agency’s finding may be supported by substantial evidence, ... it may nonetheless reflect an arbitrary and capricious action.” Bowman, 419 U.S at 284, 95 S.Ct. 438. In *86 such an event, the Court would afford no deference to the adjudicative rule of the agency precisely because the rule could not withstand the more deferential arbitrary and capricious standard.
The substantial evidence standard has no application beyond the review of “record-based factual conclusion[s],” and only in unusual circumstances will agency action surviving a substantial evidence review falter when scrutinized further. Dickinson, 527 U.S. at 164, 119 S.Ct. 1816. In performing the second-tier of analysis, arbitrary and capricious review,
[a] reviewing court must “consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a nairow one. The court is not empowered to substitute its judgment for that of the agency.” The agency must articulate a “rational connection between the facts found and the choice made.” While [a court] may not supply a reasoned basis for the agency’s action that the agency itself has not given, [a court] will uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.
Bowman, 419 U.S. at 285-86, 95 S.Ct. 438 (citations omitted).
Typically, however, a court will suspend its review after ascertaining the presence of substantial evidence. “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Edison Co. v. Labor Bd., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The relevant evidence must retain probative force, and, therefore, “fmjere uncorroborated hearsay or rumor does not constitute substantial evidence.” Id. at 230, 59 S.Ct. 206. And, a court must examine the evidence supporting the decision against “the record in its entirety, including the body of evidence opposed to the [agency’s] view.” Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); see also 5 U.S.C. § 706.
Nonetheless, as noted above, an adjudicative rule rightfully subjected to the two-tiered analysis must also at its core represent the outcome of a reasoned deliberation. “[T]he process by which [an agency] reaches [its] result must be logical and rational.” Allentown, 522 U.S. at 374, 118 S.Ct. 818. Courts accordingly must ensure compliance with the requirement of reasoned decision-making. In this regard,
[i]t is hard to imagine a more violent breach of that requirement than applying a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced. And the consistent repetition of that breach can hardly mend it.... The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel ..., and effective review of the law by the courts.
Id. at 374-75, 118 S.Ct. 818. The inconsistent or contrary application of an adjudicative rule must result in a finding that the agency has failed to support its action by substantial evidence. A court cannot deem subsequent aberrations as simply agency interpretations of the underlying rule. Id. at 377-78, 118 S.Ct. 818.
To reiterate, a court must determine whether the challenged administrative action rests upon substantial evidence and escapes a characterization of arbitrary and capricious Furthermore, the need for rea *87 soned decision-making and the consistent application of resulting decisions underlie and overarch the statutorily based analysis. Apart from this predominate approach to agency review, instances exist when a court must designate an administrative decision as either contrary to law or otherwise not deserving of deferential treatment. While the Court remains cognizant of its obligation to “examine the evidence supporting the decision against ‘the record in its entirety, including the body of evidence opposed to the [agency’s] view,’ ” Baldwin, CV 01-16, -19, -21 at 15 (quoting Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)), “[t]he agency must articulate a ‘rational connection between the facts found and the choice made.’ ” Id. (quoting Bowman Transp. v. Ark.-Best Freight Sys., 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). Patricia A. Lowe-Ennis et al. v. HCN TERO Commn., CV 04-06-07 (HCN Tr. Ct., Feb. 7, 2006) at 20-21.
As noted above, the ERA attempts to limit the appellate role “to setfting] aside or modify[ing] a Board decision if it was arbitrary and capricious.” ERA, § 5.35e. The ERA does not articulate the Court’s ability to set aside an agency decision that proves “contrary to law.” Compare Gaming Ordinance, § 1101(c)(v). Such a seemingly broad recognition of judicial authority, however, does not invite or permit a de novo review in the context of a typical administrative review. That is to say, a court cannot bypass the obviously deferential standards of review when it perceives an isolated question of law. Rather, a court may only set aside an agency action as contrary to law when the agency clearly acts outside the parameters of its legislatively delegated authority. For example, this Court would not need to defer to a GRB decision that claimed to determine an enrollment issue under the guise of a Ho-Chunk preference grievance. Such a decision would certainly be struck down as contrary to law regardless of whether the HCN Legislature incorporated this provision in the standard of review paragraph See Lonetree, SU 07-04 at 4 (noting appellate agreement with this premise).
Nowhere is this judicial authority more obvious than when a court encounters an administrative agency’s efforts to interpret and apply constitutional principles. “[C]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions.” Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[9] The HCN Legislature lacks the ability to confer constitutional adjudication authority upon an executive administrative agency, and the ERA does not purport to do so. Lonetree, SU 07-04 at 4-6. Any such attempt would prove inconsistent with the theoretical and legal underpinnings of administrative power. See Baldwin, CV 01-16, -19, -21 (HCN Tr. Ct. *88 Oct. 3, 2003) at 15 n. 5. As a matter of law, only the Judiciary has the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation, and may not abandon its constitutional mandate to interpret the due process clause in the Constitution to an agency created by the Legislature. Lonetree, SU 07-04 at 5. The Supreme Court went on to state that “if the Court were to allow a lower level of clue process in some cases but not in others, it would f... ] raise serious equal protection problems,” and that “[hfeving such a wide variety of interpretations of due process entirely negates the point of constitutional principle, which is not supposed to vary from dispute to dispute.” Id. at 5.
In the instant matter, the petitioner filed a Petition for Administrative Appeal seeking review of the decision reconsidering the previous decision by the GRB to monetarily award the petitioner in the amount of $3,500.00. The respondent again failed to enumerate exactly how the employer afforded due process for some of the charges, but not all of the charges against the petitioner. Remand, at 2. Moreover, the GRB found that the due process violations were not sufficiently weighty when weighed against the interests of the employer and prior disciplinary measures. Remand at 2.
Due process is an undisputed right of employees under the law, and to find that it did not occur regarding this termination would seem to lead the respondent to award a greater measure of damages, i.e., reinstatement and/or lost wages from the date of termination until the date of the GRB hearing, as affected by the petitioner’s mitigation of damages.[10] See ERA § 5.31a. Curiously, the respondent expects this Court to be persuaded that a termination is valid though “some” due process violations are found to have occurred, and further, uphold a withdrawal of an award of damages despite these due process violations. As previously noted by the Court, an award of damages should presumably stem from an invalid termination, not a valid one, and this award should be reasonably calculated based on the facts and circumstances of the case, e.g., back pay, lost wages, etc. See Litscher v. Ho-Chunk Nation Grievance Review Bd., CV 07-99-100 (HCN Tr. Ct., Sept. 19, 2008) at 19; Furthermore, determining whether a violation of due process has occurred is an absolute: due process was either afforded to the petitioner or not. See generally Lonetree, SU 07-04 and Janet Funmaker v. Libby Fairchild et al., SU 07-05, 7 Am. Tribal Law 61 (HCN S.Ct., Aug. 31, 2007). Upholding a super-visorial decision to terminate an employee of the Ho-Chunk Nation when such a decision has been premised on any violation of the petitioner’s due process rights violates tribal law and simply ignores the facts in the instant case.
Upon remand, the GRB simply withdrew the monetary award and noted its newfound reluctance to authorize the award of monetary damages for actual wages. Remand, at 4. In doing so, the GRB fails to understand its own authority under the ERA to award monetary damages, a question which has been directly answered in the affirmative by the Su *89 preme Court. ERA 5.35(d)(1), see also Funmaker at 3. Contradicting tribal jurisprudence and the ERA, the GRB seemingly attempts to assert a spectrum of prohibited and permissible due process violations while contemporaneously refusing to articulate the nature and scope of due process violation(s) previously found by the GRB in the instant case. Remand at 2. Specifically, the GRB found that the due process rights of the petitioner were violated by a pretextual pre-deprivation hearing as testified to by supervisor Scott Gilbeck in an unemployment insurance proceeding, as the supervisor indicated that the petitioners termination was a foregone conclusion. Id. at 2. The GRB fails to comprehend that not every supervisor within the management structure of the House of Wellness must fail to afford the petitioner her due process rights under the law. Rather that such violations requires that only one supervisor do so, against one employee. Furthermore, the GRB does not demonstrate a basic understanding that an unconstitutional deprivation of procedural due process invalidates a termination, regardless of the conduct of an aggrieved employee. See Lonetree v. Larry Garvin, SU 07-04 (HCN S.Ct., Oct. 8, 2007) at 6.
As an aside, the GRB illustrates the importance of an employer’s right to terminate an employee for egregious and unlawful conduct by using the nonsensical example of a casino employee who brings a gun to work and shoots a customer without provocation. Remand at 2, lines 23-27. Yet, the ERA provides for such a scenario in Employee Discipline subsection stating in relevant part that, “[i]t may be necessary to restrict an employee immediately from performing duties at the work site. These circumstances usually involve potential danger to the employee, co-workers or the public, or the employee’s inability to discharge assigned duties satisfactorily,” and goes on to authorize procedural requirements for such an immediate restriction against such an employee. ERA, 31b. The Court would add to this hypothetical scenario by suggesting that an employee committing such a violent crime in a tribal casino would be unlikely to timely grieve such an immediate restriction from employment but that nonetheless, this employee would possess Constitutional rights that must be upheld in civil and criminal proceedings resulting from such an act imagined by the GRB. In contrast, the petitioner in this case was a lifeguard terminated for speaking with an outside vendor regarding the safety of the pool at the House of Wellness.
In conclusion, as the GRB itself recognized “partial” due process violations as a matter of fact but nonetheless withdrew' its arbitrary monetary award in the amount of $3,500.00, the Court holds the termination at issue in the instant ease was arbitrary and capricious. Furthermore due process violations supported by the factual record of the administrative agency but nonetheless ignored in the GRB decision upon remand invites a de novo review by this Court. The Court accordingly remands the instant case to the GRB to issue for an award of actual wages lost from the date of termination until her date of hire with her current employer, calculated by her hourly wage of $11.64 at the time of her termination on December 1, 2006 up to the time of her hearing before the GRB on November 20, 2007 as mitigated by the petitioner’s subsequent employment.[11]
The parties retain the right to file a timely post judgment motion with this Court in accordance with UCN R. Civ. P. 58, Amendment to or Relief from Judg *90 ment or Order. Otherwise, “fa]ny final Judgment or Order of the Trial Court may be appealed to the Supreme Court;. The Appeal must comply with the Rules of Appellate Procedure [hereinafter HCN R.App. P.], specifically Rules of Appellate Procedure, Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within sixty (60) calendar days after the day such judgment or order was rendered, file with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees.” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.].” HCN R. Civ. P. 61.
IT IS SO ORDERED.

 The Court appreciates the assistance of Law Clerk Natalie Stites in the preparation and drafting of this opinion.

. The Court does not perform a de novo review of administrative agency decisions, and, consequently, generally refrains from making independent factual findings. Employment Relations Act of 2004 (hereinafter ERA), 6 HCC § 5.35e; but see Wayne Falcon v. GRB, SU 08-04 (February 6, 2009) at. Unless otherwise clearly indicated the below findings of fact constitute relevant findings of the administrative agency for purposes of ihis judgment as articulated within the administrative decision. The Court shall only propose alternative findings of fact in the event that the agency's factual rendition is not supported by substantial evidence and does so in the instant case. See infra pp. 14-15.

. Supra note 1.

. The ERA does not establish a timeframe in which the GRB must convene a hearing after receiving a grievance. In this instance, 348 days elapsed before the first hearing regarding the termination at issue in the case at bar.

. The Court commented on the usage of progressive discipline, as prescribed in predecessor litigation, in the following manner:
[Tjhe Court notes its disapproval of equating prior and current disciplinary measures as resulting from inefficient, incompetent or negligent performance of duties, Personnel Manual. Ch. 12, Part C, No. 1, p. 46, for the purpose of attempting to establish progressive discipline. The focus correctly remains upon whether the past discipline arose from a "similar past offense,” id. at 48, and not from actions capable of falling under a general catchall provision.
Roy J. Rhode v. Ona M. Garvin, as Gen. Manager of Rainbow Casino, CV 00-39 (HCN Tr. Ct., Aug. 24, 2001) at 20 n. 7; see also Daniel M. Brown v. James Webster, HCN Executive Dir. of Bus., CV 04-38-40 (HCN Tr. Ct., May 10, 2006) at 34 (offering further clarification of the permissible application of progressive discipline, disagreeing with employer’s linkage to only "repeated identical instances of unacceptable conduct”).

.Supra note 1.

. The full text of Baldwin appears at www.ho-chunknation.com/lPagelD^ 156.

. The HCN Legislature has incorporated the acknowledged federal standards within certain legislation. See, e.g., Amended a Restated Gaming Ordinance of the Ho-Chunk Nation (hereinafter Gaming ordinance), § 1101(c){v); compare 5 U.S.C. § 706.

. The ERA directs that “[t]he Trial Court may only set aside or modify a Board decision if it was arbitrary and capricious." ERA, § 5.35e; but cf. Gaming Ordinance, § li01(c)(v). Nonetheless, the Court shall continue to engage in the two-tiered analysis due to the inseparable components of the inquiry. Furthermore, some federal courts have denoted a convergence of the standards, making any analytical distinction unattainable. See, e.g. Aircraft Owners & Pilots Ass'n v. FAA, 600 F.2d 965, 971 n, 28 (D.C.Cir.1979) (describing the distinction as "largely semantic"). This Court disagrees with this assessment, at least in the context of formal on the record adjudication, but it reveals the interrelatedness of the two standards.

. The following federal circuit court assessments reinforce this unassailable premise. ‘‘[A]s a general rule, an administrative agency is not competent to determine constitutional issues.” Petruska v. Gannon Univ., 462 F.3d 294, 308 (3rd Cir.2006). “To be sure, administrative agencies . .. cannot resolve constitutional issues. Instead, the premise of administrative exhaustion requirements for petitioners with constitutional claims is that agencies may be able to otherwise address petitioners’ objections, allowing the courts to avoid unnecessary constitutional decisions." Am. Coalition for Competitive Trade v. Clinton, 128 F.3d 761, 766 n. 6 (D.C.Cir.1997). "[A] reviewing court owes no deference to the agency’s pronouncement on a constitutional question.” Lead Indus. Assoc, Inc. v. EPA, 647 F.2d 1130, 1173-74 (D.C.Cir.1980).

. The Court has repeatedly recognized an aggrieved former employee’s obligation to mitigate damages. Sherry Fitzpatrick v. Ho-Chunk Nation et al., CV 04-82 (HCN Tr. Ct., Feb. 20, 2006) at 16; Hope B. Smith v. Ho-Chunk Nation, CV 02-42 (HCN Tr. Ct., July 31, 2003) at 18, aff'd, SU 03-08 (HCN S.Ct., Dec. 8, 2003); Margaret G. Garvin et al. v. Donald Greengrass et al., CV 00-10, -38 (HCN Tr. Ct, Nov. 16, 2001) at 9. In the case at bar, the petitioner obtained subsequent employment in August 2008, and does not desire reinstatement. See Petitioner's Br. at 5.

. Supra, note 10.